**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Benjamin Franklin POPE,
Defendant–Appellant.**

No. 88–1464
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 14, 1989.

Kayo Mullins, Dallas, Tex., for defendant-appellant.

Mark D. McBride, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Dallas, Tex., for plaintiff-appellee.

Before GEE, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Appellant Benjamin Franklin Pope pleaded guilty to two counts of violating federal firearms statutes. He now appeals his sentence, arguing that the district court incorrectly applied the guidelines promulgated by the United States Sentencing Commission. We affirm the sentence.

## I. *Facts*

In December, 1981, Benjamin Franklin Pope was convicted of felony theft in Texas state court. He was sentenced to three years in the state penitentiary.

In November, 1987, Pope displayed and offered to sell a .22 caliber semi-automatic pistol with a threaded collar and a silencer to an undercover police officer. In April, 1988, Pope waived indictment and pleaded guilty on a two count information resulting from this incident. Count I charged Pope with the unlawful possession of an unregistered firearm, the silencer, in violation of 26 U.S.C. § 5861(d).[1] Count II charged Pope as a convicted felon with violating 18 U.S.C. § 992(g) by possessing the pistol. The latter statutory provision prohibits a convicted felon from possessing or receiv-

---

1. 26 U.S.C. § 5861(d) (1982) provides:
   It shall be unlawful for any person ...
   (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

26 U.S.C. § 5845(a) (1982) includes in the definition of firearms covered under this statute "a muffler or silencer for any firearm whether or not such firearm is included within this definition."

ing any firearm shipped in interstate or foreign commerce.[2]

Pope was sentenced to twenty-four months' imprisonment on Count I, with a concurrent twenty-four month sentence for Count II. This sentence was imposed under the guidelines promulgated by the United States Sentencing Commission. On appeal, Pope contends that the district court incorrectly applied the sentencing guidelines.

## II. *Standard of Review*

Our review of the sentence imposed by the district court under the sentencing guidelines is governed by statute. 18 U.S.C. § 3742(d)(2) (Supp. IV 1986) allows us to consider Pope's contention that his sentence was imposed as a result of an incorrect application of the guidelines. We are required, however, to give "due regard" to the district court's credibility judgments and its factual findings. We must "accept the court's findings of fact unless they are clearly erroneous." 18 U.S.C. § 3742(d). This Court has recently emphasized this principle, noting that the "district court's fact-finding power is an important guarantor of the practical judgment essential to any just sentencing procedure." *United States v. Mejia–Orosco,* 867 F.2d 216, 219 (5th Cir.1989); *United States v. Buenrostro,* 868 F.2d 135, 137 (5th Cir.1989).

## III. *Reduction of Offense Level for Guns Possessed as Part of a Lawful Collection*

Pope first argues that the district court erred in failing to reduce his offense level on Count I by six points as directed by

**2.** 18 U.S.C. § 922(g)(1) (Supp. IV 1986) provides:

It shall be unlawful for any person

(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ...

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Under this statute, the term firearm includes "any weapon (including a starter gun) which

§ 2K2.2(b)(3) of the guidelines because the silencer was possessed as part of his gun collection.[3] No evidence was introduced to support Pope's own assertion that this firearm was part of a larger collection. The district court nevertheless found, in accordance with Pope's own statements and the presentence report, that Pope had a gun "collection" at his residence. While the court made an express factual finding that "the silencer was part of a collection," it did not reduce the offense level by six points under § 2K2.2(b)(3).

■ The commentary to the Sentencing Guidelines explains that "[u]nder § 2K2.2(b)(3), intended *lawful* use, as determined by the surrounding circumstances, provides a decrease in offense level." Application Note 1, § 2K2.2 (emphasis added). Thus, the advisory notes to this section make clear that only a lawful collection of guns can be considered as a mitigating factor under § 2K2.2(b)(3). The section would apply, for example, when a legitimate gun collector possesses one firearm which has an altered serial number, in violation of 26 U.S.C. § 5861(h) (1982). In contrast, it would be contrary to the clear intent of this provision to find that an *illegal* gun collection, such as one possessed by a convicted felon, should be used to reduce the sentence of a person guilty of violating a firearms statute. Common sense and the commentary to the guidelines preclude this result.

In light of the foregoing analysis, the district court's finding that "the silencer was part of a collection" is troubling. As a convicted felon, Pope is not entitled to maintain a gun collection under 18 U.S.C.

will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(3) (1982).

**3.** Section 2K2.2 of the sentencing guidelines applies when a defendant is convicted of receipt, possession, or transportation of firearms in violation of the National Firearms Act. The district court correctly applied this provision to Pope's offense under Count I—possession of an unregistered silencer. Section 2K2.2(b)(3) provides: "If the defendant obtained or possessed the firearm solely for sport, recreation, or collection, decrease [the offense level] by 6 levels."

§ 922(g)(1). Virtually all guns have moved in commerce or "affect" commerce. Even a homemade gun could affect the interstate gun market. *Cf. Wickard v. Filburn,* 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942); *Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). But, to the extent that the district court's factual finding is simply a recognition that Pope possessed other guns at home, we cannot dispute its accuracy. We conclude, however, that to the extent the district court determined that Pope's guns were a collection *within the ambit of the sentencing guidelines,* this finding is erroneous, because as a matter of law only a gun collection that is not itself unlawful can be used to reduce an offense level under § 2K2.2(b)(3).

■ The district court, without explanation, did not reduce Pope's sentence by six offense levels under § 2K2.2(b)(3), despite its explicit finding that the silencer was part of a collection. Since we conclude that Pope's guns, which he possessed illegally, were not and could not be a collection within the meaning of § 2K2.2(b)(3), we find that the offense level should not in fact have been reduced. The district court's original calculation was therefore correct. Pope is not entitled to an offense level reduction for his unlawful accumulation of guns.

IV. *Grouping Closely–Related Counts*

■ Pope also contends that the district court erred in refusing to group Counts I and II together as closely-related offenses under § 3D1.2 of the sentencing guidelines. This section provides for the grouping together of "all counts involving substantially the same harm." Under such a grouping, Pope would be sentenced for one aggregate offense with one offense level. *See* § 3D1.3. The district court refused to make such a grouping, instead sentencing Pope by determining the combined offense level for two separate offenses pursuant to § 3D1.4.

Guideline 3D1.2 identifies one set of offenses to which § 3D1.2 specifically applies, and a second set of offenses specifi-

cally excluded from the operation of the subsection. Offenses covered by § 2K2.2 fall into neither category. Instead, they are among a third set of crimes for which "grouping ... may or may not be appropriate." The Guideline indicates that for crimes in this middle category "a case-by-case determination must be made based upon the facts of the case and the applicable guidelines (including specific offense characteristics and other adjustments) used to determine the offense level." This determination is in some parts legal rather than factual, and so is not shielded by the clearly erroneous standard. The determination does, however, depend on factual and case-specific conclusions. A reviewing court must therefore give "due deference" to the district court, and respect the informed judgments made by that court. *See* 18 U.S.C. § 3742 (1989) (as amended); *see also United States v. Mejia–Orosco,* (on petition for rehearing) 868 F.2d 807, 808 (5th Cir.1989).

■ Pope argues that his offenses should have been combined together under § 3D1.2 because the silencer and pistol involved in his offenses are necessarily linked: the silencer in Count I screws onto the pistol in Count II. We reject the claim that this physical connection mandates a finding that the two offenses are "closely related" within the meaning of the guidelines. Instead, we look to the language of the guidelines and the explanatory comments to determine whether the district court correctly decided that Pope's offenses were not "counts involving substantially the same harm" under § 3D1.2.

■ Pope specifically contends that his offenses should have been grouped together under subsection 3D1.2(d). This provision states that:

Counts are to be grouped together if the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior.

The possession of an unregistered silencer and the unlawful possession of a pistol by a convicted felon do not clearly fall under the language of this guideline. Indeed, the "total amount of harm or loss" and "the quantity of the substance involved" are not relevant factors in determining the offense level for the crimes Pope has committed. *See* § 2K2.1; § 2K2.2.[4]

The commentary to the guidelines provides further guidance on this issue. The advisory notes explain that:

> Ambiguities should be resolved in accordance with the purpose of this section, ... *i.e.* to identify and group "counts involving substantially the same harm." Thus, for so-called "victimless" crimes (crimes in which society at large is the victim), the grouping decision must be based primarily upon the nature of the interest invaded by each offense.

Application Note 2, § 3D1.2.

■ We are not persuaded that Pope's two offenses, possession of an unregistered silencer and possession of a pistol by a convicted felon, should be grouped together under the plain language of § 3D1.2(d). Even assuming that there is some arguable ambiguity, we find that the district court reached the proper result. The court concluded that the possession of an unregistered silencer and the unlawful possession of a pistol by a felon involve two distinct harms and different societal interest. The court explained: "I believe that [the silencer and the pistol] are two different instruments of danger to the community and need to be treated differently.... The very nature of a silencer requires it to be treated differently even though it is attached to the firearm itself." We add to this analysis that the second count involved possession of a firearm by a convicted fel-

on. The thrust of this offense differs widely from an unregistered firearm offense that has nothing to do with the prior criminal record of the offender. Given the plain language of the relevant provision and the different nature of Pope's offenses, we find no error in the court's conclusion that his offenses should not have been grouped together under § 3D1.2(d) of the guidelines.

## V. Conclusion

The district court's finding that the silencer was part of a gun "collection," in the sense that Pope possessed more guns than those involved in the charged offenses, is not clearly erroneous. We conclude, however, that as a matter of law Pope's accumulation of guns cannot be used to reduce his offense level under § 2K2.2(b)(3) because it was illegal for him to possess any guns. Although the court failed to explain its rationale, it was correct in refusing to reduce Pope's offense level on account of his unlawful gun collection. In addition, we find no error in the court's conclusion that Pope's offenses should not have been grouped together as closely-related counts under § 3D1.2.

AFFIRMED.

---

**4.** Pope emphasizes that the commentary for § 3D1.2(d) includes "firearms offenses" as among those crimes which may be properly grouped together under this subsection. Thus, an example in the commentary explains that "[if the] defendant is convicted of three counts of unlicensed dealing in firearms[,] [a]ll three counts are to be grouped together." Application Note 6, § 3D1.2. The fact that firearms dealing is included as one illustration of an appropriate grouping under § 3D1.2(d), however, does not mean that *all* firearm offenses are to be grouped together under that section. Instead, unlicensed firearms dealing is given as one example of crimes for which the offense level "is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm...." *See* § 2K2.3 (number of firearms sold is relevant factor in determining the offense level for unlicensed firearms dealing).